# CHARLES TOWN

## STATE v. DOYLE.

Submitted June 11, 1908.    Decided September 11, 1908.

1. INDICTMENT AND INFORMATION—*Felony—Conviction of Misdemeanor.*
     Upon the trial of an indictment under section 915, Code 1906, the waiver of the allegation and proof of former conviction by the prosecuting attorney is not to the prejudice of the defendant, and the unlawful sale as alleged being proved to the satisfaction of the

jury, it is not error to sentence the defendant accordingly on a verdict of "guilty of a misdemeanor as charged in the within indictment." (p. 370.)

2. SAME.

Upon the trial of such indictment, the prosecuting attorney may, with the permission of the court and without the consent of the defendant, waive proof of the aggravation of the former conviction alleged in the indictment and try the defendant on the allegation of selling without license. (p. 369.)

Error to Circuit Court, Ritchie County.

Mike Doyle was convicted of an illegal sale of liquors, and brings error.

*Affirmed.*

W. E. McDOUGLE, R. S. BLAIR, and W. R. BROWN, for plaintiff in error.

WILLIAM G. CONLEY, Attorney General, S. A. POWELL, and S. M. HOFF, for the State:

McWHORTER, JUDGE:

The grand jury of Ritchie county at the January term, 1907, returned an indictment "for felony" against Mike Doyle for unlawful retailing, containing an allegation that he had been convicted at a former term for a like offense.

At the same term at which the indictment was found the prosecuting attorney waived the charge of felony contained in the indictment to which the defendant objected and moved the court to quash the indictment, which motion was overruled by the court, to which ruling of the court in refusing to quash the indictment the defendant excepted and entered his plea of not guilty. The case was continued and at the next term a jury was impaneled and returned a verdict of guilty of a misdemeanor as charged in the indictment. The defendant moved the court to set aside the verdict and grant him a new trial because the same was contrary to the law and the evidence, which motion the court overruled and to which ruling of the court the defendant excepted. The defendant moved the court in arrest of judgment, which motion was also overruled and defendant excepted. The defendant then moved the court to suspend its judgment for thirty days which motion was also overruled and defendant excepted, and the

court entered judgment upon the verdict for $100.00 and ninety days imprisonment in the county jail.

The defendant procured a writ of error and *supersedeas* and says the court erred in allowing the prosecuting attorney to waive the felony charged in the indictment and to compel the defendant to go to trial on another and different charge than that for which he was presented by the grand jury; that the court erred in overruling the motion of defendant to quash the said indictment; in admitting improper evidence on behalf of the state as shown in the bill of exceptions No. 1; in giving the oral instructions given by the court on its own motion and not on the motion of the state, over the objection of the defendant; and in refusing to set aside the verdict and not granting a new trial.

The first assignment of error is the waiver by the prosecuting attorney of the felony charged in the indictment and placing the defendant on trial for a misdemeanor which he claims was a violation of his constitutional rights in that he was tried for an offense which was not charged in the indictment. The indictment is for the unlawful sale of intoxicants without a state license therefor and has all the elements of a good indictment for unlawful retailing, but coupled with that is the fact of a former conviction for a like offense alleged in aggravation of the offense charged in the indictment. Section 4583, Code 1906, provides: "If a person indicted of felony be by the jury acquitted of part and convicted of part of the offense charged, he shall be sentenced for such part as he is so convicted of, if the same be substantially charged in the indictment, whether it be felony or misdemeanor."

In case at bar there was no amendment of the indictment by striking out any portion of it to bring it within the influence of *Bain's Case*, 121 U. S. 1, as claimed by the defendant. In that case a part of the indictment was stricken out so that it was held not to be the indictment found by the grand jury. The prosecuting attorney in case at bar simply declined to prosecute upon the charge of felony or to prove the aggravation as alleged in the indictment, but was content to try it upon the misdemeanor which was well alleged in the indictment. As to the duty of the prosecuting attorney, Mr. Bishop in the 1st volume of his Criminal Law, section 815 (*a*), says: "In all our States, the prosecuting officer acts under a

discretion committed to him for the public good. He is not, as
of course, to pursue to conviction every offender against
whom he can obtain adequate evidence.   Nor is it his duty to
convict every prosecuted person of the highest offense which
can be carved out from the mass of his entire evil-doings.   It
is among the most important functions of a State's attorney to
select, out of what the law permits, the charges which he will
bring against offenders.   They have no power to elect, and
above all they cannot object if he overlooks their heavier of-
fendings and pursues them simply for the lighter."   And in
the same volume, section 789, statutes of the character of said
section 4583 are referred to as follows:   "It is competent for
legislation to abrogate the common-law rule whereby an act
cannot be both a felony and a misdemeanor, or to modify the
consequences of the rule.   *   *   *   *   Beyond which, in a
large and increasing proportion of our States, the rule and its
consequences have been partly or fully done away with by stat-
utes; so that, for example, there may be a conviction of misde-
meanor on an indictment for felony, or proof of a felony may
be introduced to sustain an indictment for a misdemeanor."
*Brigg's Case*, 7 Pick. (Mass.) 177; *State* v. *Evans*, 40 La.
Ann. 216; *Baker's Case*, 12 O. 214; *Strubble's Case*, 71 Iowa 10.

Suppose the prosecuting attorney had gone to trial upon
the indictment as it stands and had proved the sale charge in
the indictment but had offered no evidence of the fact of for-
mer conviction of a like offense, it would hardly be ques-
tioned that the jury would have had a right to convict for the
unlawful sale charged and the defendant be sentenced as for
a first sale.   The prosecuting attorney simply chose to pros-
ecute for the misdemeanor and not exact the penalty for the
felony of which it would seem the defendant could not com-
plain.   Section 1391, Bishop's New Criminal Procedure,
says:   "The simple form of the *nolle prosequi* is to the en-
tire indictment, but it may be to a part of the counts or even
to a separable part of any one count, such as on an indict-
ment for the burning of a dwelling house and barn it may be
to the barn alone.   *   *   *   *   On a charge of assault with
intent to murder there may be a *nolle prosequi* as to this in-
tent and a conviction for the assault alone."   And section
1390 says the prisoner's consent to such *nolle prosequi* is not
essential.

24

*State* v. *Whitt*, 39 W. Va. 468, is cited and relied upon by the defendant as being conclusive of this case. In that case the indictment was clearly insufficient as an indictment for a felony and being returned by the grand jury in their finding as an indictment for a felony the entry of the finding was in conflict with the indictment on which the accused was tried; but the case at bar differs from that in that it was a good indictment for a felony, hence the record of the finding and the indictment were in entire harmony. The court did not err in overruling the motion to quash the indictment.

It is complained that the court erred in giving the oral instructions, the first telling the jury, "That while there are two sales alleged which would constitute a felony, the felony has been waived by the prosecuting attorney and you are only to try the case as if it were a single sale and you are not to allow the existence of the charge on the face of the indictment to prejudice you in your finding;" whereby the jury was specifically instructed to disregard the aggravation of the offense by the fact of the former conviction as alleged in the indictment. It is contended that this oral instruction misled the jury to the prejudice of the defendant in that it states contrary to law that there are two sales alleged in the indictment which would constitute a felony. The jury could not have misunderstood this instruction as they were particularly charged that they were to try only for the single sale, a simple violation of the law in making a sale, and there was no evidence in the case except as to the single transaction mentioned by Shrader and the circumstances attending that one transaction between witness Shrader and the defendant was all that was left in the case when the prosecutor did not choose to prove the former conviction,

The other oral instruction was that they, the jury, were "the sole judges of the weight of the testimony and what it proves, that being a matter peculiarly within the province of the jury to determine." As to this instruction the law is so well settled that it would seem to be unnecessary to say anything further concerning it. As said in *Bowyers' Case*, 43 W. Va. 180, "It is not worth while to cite authority for the proposition that where there is evidence tending to criminate, the jury is almost uncontrollably the judge of its force and weight, and of the proper inferences from the facts proven."

It is contended that there is no evidence to support the verdict in the case. Would the facts and circumstances warrant the jury in finding the verdict of guilty? There was no motion to strike out the evidence but the same was submitted to the jury on the evidence of the state. The testimony of Jacob Shrader is that he went to the house of the defendant "and asked him if he was selling booze, and he said he were not. I then—we were talking there, and as we come out to the gate there was a quart of whiskey setting at the corner of the coal house, and I picked up the quart of whiskey and laid down a dollar and a half, and Mr. Doyle told me to leave no money there, that he was not selling whiskey." Witness states that when they first saw the whiskey "Mr. Doyle first made answer, 'Whose whiskey were that?' and he says, 'there is a quart of whiskey.' He said, 'take that out of here, I don't want it here.'" When the witness applied to the defendant to buy whiskey defendant told him that he was not selling whiskey but went out with him through the house in sight of the whiskey, told him to take the whiskey away that he did not want it there but to leave no money as he was not selling whiskey. Witness Shrader says he did not see defendant take the money, and stated on cross-examination that he and Lester Hickman and Mark Taylor went to the place where the money was left when the whiskey was taken and they found it still there, or money like it in denomination. But this was some days after Collins and Moss looked for it, soon after the money was left there, and did not find it and say it was not there and they would have seen it if it had been there. Defendant saw witness put the money down and take the whiskey away. It is a very strange circumstance that the money should be found there nearly a week after the transaction when others had some days before that time looked for it and it was gone. The circumstances of the case are such that the jury were fully justified in their conclusion that the whiskey was the property of the defendant and that he had made a sale thereof to the witness. As to the sufficiency of circumstantial evidence to convict for selling intoxicating liquors, see 23 Cyc. 249 (D), and authorities there cited. Counsel for defendant cite the case of *Ferrell*, 22 W. Va. 759, as being a stronger case against defendant than this. In that case the witness—went into defendant's

room, found some whiskey in a bottle in a box, took a drink from the bottle, laid down ten cents and went out. There was no evidence that such a thing ever happened there before, and no evidence that the defendant knew anything about it, that he received the money or knew that witness had taken the whiskey. Very different this case where witness went to defendant to buy whiskey, defendant told him he was not selling whiskey but they went out together where they were in sight of the coveted bottle when defendant called witness' attention to the whiskey and told him to take it away but to leave no money as he was not selling whiskey. It is clear from the manner of Shrader's testimony that he was an unwilling witness and did what he could to shield the defendant. The jury believed, and were justifiable in believing, that the defendant's telling the witness Shrader to take the whiskey away but to leave no money, was simply a subterfuge to cover up the transaction. There was evidently a complete understanding between Shrader and the defendant. Shrader wanted the whiskey and Doyle wanted to sell it. The question was, how was the sale to be effected and yet not to be a sale? The whiskey was in a bottle on the ground, how it got there nobody was to know. The money was to take its place on the ground, but contrary to the directions of Doyle who was particular to tell him to leave no money as he was not selling whiskey. If it were not his whiskey why should he direct Shrader to take it away? It was simply one of those transparent subterfuges resorted to by the man who wants to buy and the man who wants to sell in violation of the law prohibiting sale without a permit under the law. Their trick was not well planned, an intelligent jury of honest men could not fail to "see through it" at a glance.

There were exceptions taken to the ruling of the court in permitting certain evidence to go to the jury. Witness John M. Collins testified that he arrested defendant on a warrant sworn out by Shrader for selling whiskey. Objection was made to witness' reference to the warrant as the warrant was the best evidence and should be introduced, but the court ruled that the warrant was only used as evidence to fix the time that the witnesses Collins and Moss were on defendant's premises, they having been there to search for whiskey and other intoxicating liquors and looking for the money which

Shrader stated he left there, and it was to show that they were making this search before the time that Shrader stated that he and Mark Taylor and Lester Hickman found the money there. Defendant does not even put Taylor or Hickman or either of them on the stand to corroborate the finding of the money. Witnesses Collins and Moss both testified that they had gone to the place where the money was left about the next day after the transaction and the money was not there then. Several days after that was when Shrader said he and Hickman and Taylor went and found the money. This was evidently another scheme, an afterthought to help them out, but too late. The court only allowed the warrant to be used in fixing the date when Collins and Moss found the money gone, which was several days before Shrader, Hickman and Taylor were said to have found it. No evidence was admitted which could have prejudiced the defendant in his defense. "An appellate Court does not reverse the trial court for errors in the admission of evidence when it can clearly see that no prejudice did or could result therefrom to the accused."—*Stover* v. *Commonwealth*, (Va.) 22 S. E. 874.

As counsel for defendant make no mention in their brief of the error assigned in the court's refusal to suspend the judgment for a period of thirty days, they do not seem to rely upon it and we think there is nothing in the assignment.

We see no error in the judgment and it must be affirmed.

*Affirmed.*