STATE OF IOWA, Appellee, v. WILLIAM PAPST, Appellant.

No. 43066.

April 7, 1936.

John R. De Witt, for appellant.

Edward L. O'Connor, Attorney General, Walter F. Maley, First Assistant Attorney General, and E. S. Holton, County Attorney, for appellee.

KINTZINGER, J.—At about 9 a. m., or shortly thereafter, on September 7, 1934, the Cumberland Savings Bank of Cumberland was held up and robbed of about $1,000 by four men. Two of the men remained on the outside of the building, and two entered the bank. The cashier, assistant cashier, and a customer were in the bank when they entered. One of the two holdup men had a gun in each hand and held up the occupants of the bank. One of the men took the money while the man with the two guns held up the occupants, and while so doing fired one shot at one of the officers of the bank. After securing the money, the holdup men took the two bank officials out of the bank, placed them on their get-away car, and took them out into the country where they were released.

In December thereafter, the defendant, William Papst, was arrested in Chicago, brought back to Iowa, and was identified as one of the holdup men who held up the officials at the point of two guns and fired a shot from one of the guns.

On January 23, 1935, the grand jury of Cass county returned an indictment against the defendant, accusing him of the crime of entering the Cumberland Savings Bank at Cumberland, Cass County, Iowa, on September 7, 1934, with intent to

rob. On his arraignment, January 23, 1935, he had no counsel, and John R. De Witt, an attorney, was appointed to defend him. On January 23, 1935, he entered a plea of not guilty and the case was assigned for trial for January 26, 1935. On January 25, 1935, defendant filed a motion for a continuance until the next term of court. This motion was based upon the alleged fact that one Francis Harper, who was then in custody of the Federal officers at Lexington, Kentucky, would testify, if present, that he was the party who held up the bank officers with two guns and fired one shot, and that the defendant was not present at that time. The court refused a continuance of the case until the next term of court, but postponed the trial until February 7, 1935.

The motion for a continuance also showed that the prospective witness would not be returned to within 100 miles of Atlantic until some time after the first of February, and that if a continuance was granted until the next term of court, defendant would be able to secure his deposition. Shortly thereafter, it appeared that said Harper had been returned to Lincoln, Nebraska, and was there in custody of the Federal officers.

On the 5th day of February, it was stipulated by agreement of both parties that ''the deposition of the said Francis Harper may be taken orally at Lincoln, Nebraska, on the 5th day of February, 1935.'' Pursuant to that stipulation, the deposition of said Francis Harper was taken at Lincoln, Nebraska, on February 5, 1935, and was presented and read in court subject to objections.

The evidence on the part of the State consisted of the two bank officials and a customer who were held up in the bank at the time of the robbery. These three witnesses positively identified the defendant as being the man who carried the two guns and fired the shot referred to.

The defendant denied this testimony and said that he was not in the town of Cumberland at the time of the robbery, that he knew nothing of it until later, and didn't even know of the existence of the town of Cumberland at the time of the robbery. He also offered the evidence of his mother, of Council Bluffs, his sister, of Omaha, and his wife, tending to establish an alibi. He and his wife and mother all testified that they were at his mother's home in Council Bluffs on the night of September 6, 1934, remained there all night, had breakfast there on the morn-

ing of September 7, 1934, and left there about 9 o'clock a. m. on that date. He and his wife testified they went from there to Omaha to visit his sister in Omaha, and that they arrived there between 11:30 and 12 o'clock a. m. on September 7, 1934.

The record also shows that the defendant had previously been convicted and served time for the commission of two or three different felonies.

The purpose of securing the deposition of the witness Harper was to show that Harper was the man who held the two guns and fired the shot during the holdup in the bank. The witness Harper failed to give this testimony, but on the contrary he, in substance, refused to so testify on the ground of incriminating himself.

The case being submitted to the jury on the evidence offered, a verdict was returned finding the defendant guilty, and he was sentenced to life imprisonment. Hence the appeal.

I. One of the errors alleged for a reversal was the refusal of the lower court to sustain the motion for a continuance to the following term of court. The reason given for a continuance was to secure the deposition of a witness named Francis Harper, who at that time was outside of the state of Iowa and in custody of Federal officers for the commission of a public offense.

The court refused to grant a continuance to the next term of court, but granted a postponement for ten days to enable defendant to get the deposition of the witness Harper, who was in Lincoln, Nebraska. On February 5, 1935, the deposition of said Francis Harper was taken at Lincoln, Nebraska, on an agreed stipulation signed by both parties. This deposition was on file in the lower court before the trial was reached, and was used at the trial. The reason for a continuance to the following term of court no longer existed when the case was reached for trial.

The granting or refusing a continuance in a criminal case is generally within the discretion of the trial court. State v. Walker, 192 Iowa 823, 185 N. W. 619; State v. Candler, 204 Iowa 1355, 217 N. W. 233; State v. Griffin, 218 Iowa 1301, 254 N. W. 841.

It is not necessary, however, in this action to determine whether or not the refusal of the court to grant a continuance to the next term was an abuse of its discretion, because the reasons for the continuance no longer existed after the deposition of the witness Harper was taken. It necessarily follows that no preju-

dice resulted from the court's ruling on the motion, and we find no error therein.

■■■ II. Defendant also contends that the court erred in refusing to permit the jury to view the premises. Section 13856 of the Code of 1931 provides that:

"When the court is of the opinion that it is proper the jury should view the place in which the offense is charged to have been committed, or in which any other material fact occurred, it may order the jury to be conducted * * * to the place * * *."

There was no question about the fact of the commission of the holdup and robbery. The chief question in the case related to the identity of the defendant as being one of the participants therein. Three of the State's witnesses positively identified the defendant as being one of the holdup men. Defendant offered to prove an alibi by the testimony of three witnesses tending to show that at the time the offense was committed, he was either at Council Bluffs or Omaha. This raised a pure question of fact as to identity, and the lower court held that a view of the premises was not necessary for that purpose.

The exercise of the authority of the lower court to allow the jury to view the premises under the statute referred to rests in the discretion of the trial court. King v. Iowa Midland R. Co., 34 Iowa 458; Clayton v. Chicago, etc., Ry. Co., 67 Iowa 238, 25 N. W. 150; State v. Carr, 200 Iowa 306, 204 N. W. 218.

We have carefully considered the evidence and fail to find that there was any abuse of the court's discretion in not allowing the jury to be taken from Atlantic to Cumberland to view the premises. The court held that a view of the premises would not materially aid the jury in determining the identity of the defendant. It necessarily follows that no prejudicial error resulted.

■■■ III. Defendant testified that he was first told of the robbery of the bank by his nephew, Francis Harper, at Chicago, some time in October. The defendant was then asked the following question: "Q. And what did he tell you about the robbery of the Cumberland Savings Bank?" This was objected to as immaterial and hearsay, and the objection was sustained.

Defendant contends that the court's ruling in sustaining the objection was erroneous. No reason is alleged in the error why the ruling of the lower court was not correct. The ques-

tion clearly called for immaterial and hearsay testimony, and we find no error in the court's ruling thereon.

■■■ ˙IV. Other errors alleged relate to the action of the court in not permitting the defendant, and also the witness Harper to answer certain questions. The witness Harper testified in substance that he would not say that he was the person who participated in the bank robbery, or that he was the man who held the two guns and fired the shot in the bank at the time of the holdup. The evidence of Harper did not tend ˙to establish that he was guilty of the crime charged against the defendant. On the contrary, he refused to so testify. Under such circumstances, the evidence was not admissible. State v. Brooks, 192 Iowa 1107, loc. cit. 1115, 186 N. W. 46; State v. Banoch, 193 Iowa 851, loc. cit. 855, 186 N. W. 436.

In State v. Banoch, 193 Iowa 851, loc. cit. 855, 186 N. W. 436, 437, this court said:

"It is further claimed that the court deprived the defendant of his right to prove that the crime charged was in fact committed by another person. A sufficient answer to this contention is that the evidence introduced and offered does not even tend to establish that another person committed the crime."

No reasons are given as grounds for the alleged errors. However, we have examined the errors so alleged carefully, and find no merit therein.

■■■ V. The defendant also contends that the court erred in refusing to ˙permit the introduction of a certain photograph of Francis Harper in evidence, as part of its rebuttal evidence. The State objected to the offer of Harper's picture on the ground that it was immaterial, irrelevant under any issue in the case, and did not tend to prove or disprove the guilt or innocence of the defendant. This objection was sustained.

˙ The defendant, in assigning this action of the court as error, simply states: "Error 10. That the court erred in refusing to admit in evidence Exhibit 'A,' a picture of Francis Harper." No reason whatever is given why this ruling of the court was erroneous.

No testimony was introduced showing that the man who held the two guns and fired the shot during the holdup was the witness Harper. The picture was not shown to the witnesses, who identified the defendant as the two-gun man; nor were they

asked if that was the picture of the man who held them up with the two guns and fired the shot during the holdup. If they had so testified, the evidence would have been admissible. The record discloses no such state of facts. The three occupants in the bank testified positively that the defendant was the man who held the two guns and did the shooting. We are constrained to hold that the ruling of the court was correct.

There was a clear conflict in the evidence as to the guilt or innocence of the defendant, and the case was properly submitted to the jury. We have examined the record carefully and find no error therein. It necessarily follows that the judgment of the lower court must be and is affirmed.—Affirmed.

DONEGAN, C. J., and HAMILTON, ANDERSON, PARSONS, STIGER, ALBERT, and MITCHELL, JJ., concur.